UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID L. COOK,
                            **Plaintiff,**

    -against-                                             03-CV-1288

THE CITY OF SARATOGA SPRINGS,
THE SARATOGA POLICE DEPARTMENT OF
THE CITY OF SARATOGA SPRINGS, and
Police Officers T. SARTIN, P. VEITCH,
and M. E. LEFFLER, Individually and
as Agents, Servants, and/or Employees
of Saratoga Police Department of
The City of Saratoga Springs,

                            **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I. INTRODUCTION**

      Plaintiff commenced this action asserting various claims under 42 U.S.C. § 1983 and state law arising from his arrest and prosecution for the crimes of Menacing in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree. The municipal defendants (The City of Saratoga Springs and the Saratoga Police Department of The City of Saratoga Springs), and the individual defendants (Officers T. Sartin, P. Veitch, and M. E. Leffler) moved separately for summary judgment. Oral argument was heard on March 14, 2005, and, on March 21, 2005 the Court issued a Decision and Order that granted in part and denied in part both motions. See 3/21/05 Dec.

& Ord. [doc. # 42]. Relative to the claims against the individual defendants, the Court dismissed all claims except for a claim asserting that the individual defendants violated Plaintiff's Fourth Amendment rights by entering his home without lawful authority. On this illegal home entry claim, the Court found that the claim had not been clearly pled in the Complaint and that the record had not been sufficiently developed so as to allow the Court to determine whether a justification for entry existed, or whether the officers are entitled to qualified immunity. Accordingly, the Court denied the motion, allowed the parties to conduct further discovery on the claim, and granted leave to file a second summary judgment motion. Presently before the Court is the second summary judgment motion seeking to dismiss the illegal home entry claim. For the reasons that follow, the motion is granted.

## II. BACKGROUND

The Court assumes familiarity with the facts set forth in the March 21, 2005 Decision and Order. 3/21/05 Dec. & Ord., pp. 2-9. Suffice it to say that the case arises out of a confrontation between Plaintiff and Douglas Walker at Plaintiff's residence in the City of Saratoga Springs, New York on April 22, 20002. As a result of this incident, both men called the 911 emergency number. The police first received and responded to Walker's call. Walker claimed that Plaintiff had pointed a handgun at him and threatened to kill him. Upon arriving at the scene, the police spoke to Walker and one of his friends, and then approached Plaintiff's apartment. Upon approaching the apartment, the police learned that Plaintiff was on the telephone with the 911 dispatcher. See Veitch 6/13/05 Aff. ¶ 3; Leffler 6/13/05 Aff. ¶ 2. The officers told the 911 dispatcher to tell Plaintiff to come out onto his porch. Veitch 6/13/05 Aff. ¶ 3; Leffler 6/13/05 Aff. ¶ 2. Plaintiff complied, and when he came out, the officers observed a black object in his hand. Fearing that object might be weapon, the

officers drew their weapons and pointed them at Plaintiff. One officer, Defendant Leffler, also had a police canine with him. When the officers realized that the item in Plaintiff's hand was actually a telephone, the officers aimed their weapons away from Plaintiff and Defendant Leffler returned the police canine to the canine vehicle. See Mun. Def. 2nd 7.1 Stat. ¶¶ 4-5; Cook 7/14/05 Aff. ¶ 5; Leffler 6/13/05 Aff. ¶ 2. There is some dispute as to what occurred in the moments that followed leading up the officers' entry into Plaintiff's apartment.

Officers Veitch and Sartin contend that when they determined that Plaintiff was not holding a weapon, they approached him while he was still on the porch and he launched into a "running commentary" in which he explained his side of the story regarding the confrontation with Walker. See Mun. Def. 2nd 7.1 Stat. ¶ 5. These officers further contend that Plaintiff began showing them evidence that supported his side of the story, including showing them the door jamb that Plaintiff contended Walker broke when he kicked in the door. Id. As part of this "running commentary," Plaintiff entered his apartment with the officers giving the impression that he wanted the officers to enter so that he could convince them to arrest Walker. See Veitch 6/13/05 Aff. ¶¶ 3, 7; Leffler 6/13/05 Aff. ¶ 3; Sartin 6/13/05 Aff. ¶ 4. Accordingly, Officers Veitch and Sartin entered the apartment under the impression that Plaintiff was consenting to their entry. See Veitch 6/13/05 Aff. ¶¶ 3-4, 7-; Sartin 6/13/05 Aff. ¶¶ 4-7. Both Officers Veitch and Sartin also contend that in entering Plaintiff's apartment, they were concerned for their own safety and the safety of others given the nature of the allegations by Walker that Plaintiff had pointed a loaded handgun at him. See Veitch 6/13/05 Aff. ¶¶ 2, 4; see Sartin 5/16/05 Dep. p. 10.[1] Officer Leffler asserts that when he returned

---

[1] In this regard, Officer Sartin testified as follows:

(continued...)

from putting his canine back in the canine vehicle, the other two officers were already in Plaintiff's apartment and Leffler entered the apartment under the assumption that Plaintiff had invited the officers in. Leffler 5/16/05 Aff. ¶ 3.

Plaintiff's rendition of the facts resulting in the entry into the apartment, as set forth in his opposition to the current motion, differs from that of the officers. Plaintiff contends that when he came out of his apartment, he was ordered to step off of his porch toward the officers, and then ordered to step into his house with the officers. Cook 7/14/05 Aff. ¶ 7. Although Plaintiff admits that he never verbally protested the officers' entry into his apartment, Mun. Def. 2nd 7.1 Stat. ¶ 6, he asserts that he was never told he could refuse their entry. Cook 7/14/05 Aff. ¶ 7. Further, Plaintiff contends that he "felt intimidated and coerced by the presence of all the officers and their weapons" and "never felt free to prevent their entry into [his] home." Id. ¶ 9. Plaintiff also attests that there was no "running commentary" outside the house, and that "while outside my house I had no conversation with the officers other than following their directives." Id.

While, on a motion for summary judgment, the Court must view the evidence in the light most favorable to Plaintiff and draw all reasonable inferences in his favor, Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002), it is well settled that "[a] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. New York City Department of

---

$^1$(...continued)
Q: Once you ascertained Mr. Cook was unarmed, did you consider it an emergency situation?

A: Until I had my hands on the handgun, I wasn't quite sure what we were dealing with.

Q: And the handgun you're referring to is the handgun that Mr. Cook supposedly had?

A: Yes, sir.

Corrections, 84 F.3d 614, 619 (2d Cir. 1996). When Plaintiff was questioned under oath on November 4, 2003 pursuant to § 50-h of the General Municipal Law, he stated:

> Well, the officers started approaching me. Basically there was a discussion. It was cold out, you know, he said, "we'll go inside." They asked me if I had a gun on the premises. I told them "Yes, I do." Once we went inside, one of the officers asked where the gun was being housed. I told him, I showed him it was ... by pointing. I said it was in my bedroom and it was in a drawer.

Trans. § 50-h hearing, p. 37.

To the extent Plaintiff previously testified that there was "a discussion" outside of the apartment before he and the officers entered the apartment, and to the extent he testified that he told the officers, before he entered the apartment, that he had a handgun, those facts are deemed established on this motion. His recent affidavit is disregarded to the extent he asserts that there was no discussion outside his apartment. Other sworn testimony by Plaintiff supports the conclusion that some discussion occurred with the officers before they entered the apartment. In this regard, Plaintiff testified at his deposition that after he was ordered to step off of his porch toward the officers, one of the officers stated that he recognized Plaintiff as a "Saratoga County Sheriff's Deputy for Corrections." Cook 5/10/05 Dep. p. 19. Plaintiff also concedes in his recent affidavit that as the group was entering his apartment, he was questioned by the officers as to whether he had a handgun. See Cook 7/14/05 Aff. ¶ 8.

There is also no dispute that once inside the apartment, Plaintiff engaged the officers in a discussion of his version of events, and Plaintiff believed, at least until he was read his Miranda rights at the station, that he was being asked to go to the police station so that he could sign a statement that would effectuate Walker's arrest. See 3/21/05 Dec. & Ord., pp. 5-7.

**III. STANDARD FOR SUMMARY JUDGMENT**

The Court applies the well-settled standard for summary judgment as set out in the March 21, 2005 Decision and Order in this case. See 3/21/05 Dec. & Ord., pp. 9-10.

**IV. DISCUSSION**

The Fourth Amendment prohibits warrantless entries by police unless the entry is authorized by a valid exception to the warrant requirement, see Minnesota v. Olson, 495 U.S. 91, 100 (1990)(warrantless intrusion may be justified by hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling); see also Maryland v. Buie, 494 U.S. 325, 327 (1990)("A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."); United States v. Oguns, 921 F.2d 442, 446-47 (2nd Cir. 1990)(extending Buie to include protective sweeps into a home when a suspect is arrested outside the home); Loria v. Gorman, 306 F.3d 1271, 1284 (2d Cir. 2002), or the person whose home is entered has consented to the entry. See U.S. v. Deutsch, 987 F.2d 978, 883.(2d Cir. 1993).[2]

---

[2] In Deutsch, the Second Circuit considered whether police officers had improperly entered a suspect's home without a warrant to effectuate an arrest. The Circuit Court wrote:

> Law enforcement agents must conform their behavior to the requirements of the Constitution and normally may not enter anyone's property without a properly executed warrant. Absent exigent circumstances (certainly not present here), "the warrantless entry of law enforcement officers into the private home of a suspect, for the purpose of making an arrest supported by probable cause, is barred by the Fourth Amendment...." United States v. Campbell, 581 F.2d 22, 25 (2d Cir.1978) (citations omitted).
>
> If the suspect consents to the search, however, a warrantless search may be valid. E.g., Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S. Ct. 2041, 2045, 36 L.E d.2d 854 (1973). The prosecution bears the burden of showing, by a preponderance of the evidence, United States v. Buettner-Janusch, 646 F.2d 759, 764 (2d Cir.), cert. denied, 454 U.S. 830, 102 S. Ct. 126, 70 L. Ed.2d 107 (1981), " 'that the consent was, in fact, freely and voluntarily given.' " Schneckloth, 412 U.S. at 222, 93 S. Ct. at 2045 (quoting Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792, 20 L. Ed.2d 797

(continued...)

There is no dispute that the officers did not have a warrant to enter Plaintiff's apartment on April 22, 2002. The record also presents some factual questions that prevent the Court from determining whether, under the circumstances, the officers were legally justified in entering the apartment based upon Plaintiff's consent (express or implied), see Deutsch, 987 F.2d at 883 ("[r]esolution of the conflicts in testimony concerning the search of [an] apartment was essentially a question of credibility")(citation omitted), or based upon a "protective sweep" exception to the warrant requirement.

Nevertheless, even assuming that the individual defendants violated Plaintiff's clearly established Fourth Amendment rights by entering his apartment without a warrant and without an actual legal justification to do so, they are entitled to qualified immunity because reasonable officers could disagree as to the legality of their actions under the circumstances.    "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action ... assessed in light of the legal rules that were clearly established at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987)(internal quotation marks and citation omitted).

> Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act.

---

²(...continued)
(1968)).  Voluntariness may not be established simply by a showing of acquiescence to a police officer's order to allow entry;  such consent, however, need not be expressed in a particular form but "can be found from an individual's words, acts or conduct." Krause v. Penny, 837 F.2d 595, 597 (2d Cir.1988) (citing Buettner-Janusch, 646 F.2d at 764).   Thus, the district court must consider the totality of the circumstances to determine whether the consent was freely given.  United States v. Lindsey, 877 F.2d 777, 783 (9th Cir. 1989).

987 F.2d at 883.

Anthony v. City of New York, 339 F.3d 129 (2d Cir. 2003)(internal quotation marks and citations omitted).  "[Q]ualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances," and officers are entitled to the defense unless the officers' judgment was so flawed that no reasonable officer would have made a similar choice. Lennon v. Miller, 66 F.3d 416, 424-25 (2d Cir. 1995). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

     First, by all accounts, Plaintiff seemingly consented to the officers' entry into the apartment. Whether the officers were aware that Plaintiff had called 911, or simply believed he was being a complaint suspect, there is no indication that Plaintiff acted in a manner that would have signaled to a reasonable officer that he opposed police entry into his home.  Upon engaging Plaintiff in discussion outside his apartment, the officers became aware that Plaintiff had some criminal justice background through his position as a "Saratoga County Sheriff's Deputy for Corrections," and Plaintiff never said anything that would have given the impression that he was not voluntarily allowing the officers into his apartment.  Quite to the contrary, his testimony at the 50-h hearing about mentioning that it was cold outside gives the indication that he wanted to move the "discussion" inside.  Given Plaintiff's attestation that he had called 911 to file charges against Walker, that the police asked him if he had a gun "while walking in," and that he eventually explained to the police his version of what occurred in the belief that he was going to be filing charges against Walker, it appears, even under Plaintiff's version of events, he gave every indication that he was consenting to police entry into his apartment.  He has provided no evidentiary details that would have indicated to a reasonable officer that he objected to such entry, and, given the

8

totality of the circumstances, a mistake as to Plaintiff's unspoken intentions was not unreasonable.

Second, and assuming that a fact finder could conclude that it was objectively unreasonable for the officers to believe that Plaintiff consented to such entry, objectively reasonable officers could disagree whether they had a right to make a protective sweep around the porch - including entering into the apartment - to insure that someone else did not have access to the gun. See Buie, 494 U.S. at 327; Oguns, 921 F.2d at 446-47. The rationale for the protective sweep would apply whether the officers had decided to arrest Plaintiff on the porch, Cea v. Ulster County, 309 F. Supp.2d 321, 333 (N.D.N.Y. 2004)(Scullin, C.J.),[3] or to merely question him about the complaint. McCardle v. Haddad, 131 F.3d 43, 48 (2d Cir. 1997);[4] see Veitch Dep. p. 50 [doc. # 25(7)]("[I] [a]dvised [Plaintiff] that I was going to secure the gun while we were investigating the crime.").

At the point that the officers encountered Plaintiff on the porch, they already possessed probable cause to be believe that he committed a crime involving the use of a handgun. Whether

---

[3] As Chief Judge Scullin stated in Cea:

Although there is a presumption that a search by a police officer without a warrant is unreasonable, when arresting a person in his home, "officers may perform a protective sweep incident to the arrest to protect themselves or others." United States v. Lauter, 57 F.3d 212, 216 (2d Cir. 1995). As part of a protective sweep pursuant to an arrest, officers may look in spaces "immediately adjoining the place of arrest from which an attack could be immediately launched." Id.

309 F. Supp.2d at 333.

[4] In McCardle, the Second Circuit held:

A limited search for weapons, without a warrant and without probable cause, is also permissible in connection with a lawful custodial interrogation that does not rise to the level of an arrest, see, e.g., Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879-80, 20 L. Ed.2d 889 (1968) ("Terry "), on the rationale that "[i]f a suspect is 'dangerous,' he is no less dangerous simply because he is not arrested," Michigan v. Long, 463 U.S. 1032, 1050, 103 S. Ct. 3469, 3481, 77 L. Ed.2d 1201 (1983). Further, the suspect need not actually be dangerous to validate such a limited-purpose search, so long as the officer has a reasonable belief that the suspect poses a danger and may have a weapon within his reach.

131 F.3d at 48.

9

Plaintiff began reciting his version of events while still on the porch or not, there is no dispute that the police learned before entering the apartment that Plaintiff did have a weapon but did not have it on his person.  This begged the question of whether the weapon was located in close proximity within the apartment, and if it was, whether it was easily accessible to Plaintiff or to someone else in the apartment. The Second Circuit Court of Appeals, the New York State courts, and virtually every circuit court that has addressed the issue has held that officers may conduct a protective sweep into an adjoining home when they make an arrest outside the home and the facts reasonably indicate, *inter alia*, that someone within the home could fire a weapon at the police. See Oguns, 921 F.2d at 446-47; People v. Lasso-Reina, 305 A.D.2d 121, 122 (1st Dept. 2003);[5] United States v. Cavely, 318 F.3d 987, 995 (10th Cir. 2003)("Although it is true that Buie involved an in-home arrest, courts have recognized that the same exigent circumstances present in Buie can sometimes accompany an arrest just outside of a residence or other structure.  Depending on the circumstances, the exigencies of a situation may make it reasonable for officers to enter a home without a warrant in order to conduct a protective sweep.")(citing, *inter alia*, Oguns); United States v. Wilson, 306 F.3d 231, 238 (5th Cir. 2002)(sweep reasonable where suspect arrested just outside entry); United States v. Colbert, 76 F.3d 773, 776-77 (6th Cir. 1996)(protective sweep for arrest just outside home may be justified); United

---

[5] The New York State Supreme Court, Appellate Division, First Department, held in Lasso-Reina:

> Upon defendant's lawful arrest, the police properly conducted a limited protective sweep of defendant's house to determine if there were any individuals present who might destroy evidence or pose a threat to the officers (see Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276). The need for a security sweep of the house was not diminished by the fact that defendant was arrested in his backyard (see United States v. Oguns, 921 F.2d 442, 446-447; United States v. Agapito, 620 F.2d 324, cert. denied 449 U.S. 834, 101 S.Ct. 107, 66 L. Ed.2d 40). Among the many factors justifying entry into the house were that this drug conspiracy was known to have many participants, that the house had windows from which shots could be fired at the police who were in the backyard, and that defendant's stepdaughter told the police that someone was hiding in an upstairs closet.

305 A.D.2d at 122.

States v. Henry, 48 F.3d 1282, 1284 (D.C. Cir. 1995)(Buie rationale applicable to arrest just outside home); United States v. Kimmons, 965 F.2d 1001 (11th Cir. 1992). Although there is no evidence presented that would tend to indicate that anyone else was present in Plaintiff's apartment at the time, there was no evidence establishing that the apartment was empty. Given the gravity of the allegations, and the fact that Plaintiff did not have the gun on his person when officers approached him on the porch, the officers were called upon to make an on-the-spot judgment in tense circumstances regarding the need to protect themselves, or anyone else in the apartment or surrounding area. See fn. 1, *supra*. This concern was heightened by the fact that Plaintiff's home was located in close proximity to a school and children were outside the school at the time. See Veitch Dep. p. 34 [doc. # 25(5)]. Even if their decision to enter the apartment was legally wrong because there was no indication that anyone else was in the apartment, reasonable officers in these circumstances could disagree whether they were legally justified in entering the apartment to locate the weapon or to see if anyone else was present inside. See Escalera v. Lunn, 361 F. 3d 737, 743 (2d Cir. 2004)("Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.")(internal quotation mark and citation omitted); Loria, 306 F.3d at 1287 ("Gorman is entitled to qualified immunity, however, if reasonable officers could disagree as to whether exigent circumstances were present."); Koch v. Town of Brattleboro, 287 F.3d 162, 169 (2d Cir. 2002)(holding that a grant of summary judgment based on qualified immunity "was appropriate because the officers reasonably believed that exigent circumstances justified their entry"). Consequently, the Court finds that the officers are entitled to qualified immunity on that much of Plaintiff's case asserting a claim for unlawful home entry.

## V.  CONCLUSION

Based upon the above, the individual defendants' second motion for summary judgment [doc. # 45] is **GRANTED**, and the unlawful entry claim against the individual defendants is **DISMISSED**.  Based upon this decision and the Court's March 21, 2005 Decision and Order, all claims against the individual defendants, Officers T. Sartin, P. Veitch, and M. E. Leffler, are dismissed.  The case shall now proceed to trial on the claim against the City of Saratoga Springs asserting an unconstitutional policy of not accepting or investigating criminal cross complaints.

**IT IS SO ORDERED**

DATED: August 16, 2005

_____
Thomas J. McAvoy
Senior, U.S. District Judge